J-S80031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| R.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| A.F. | : | |
| | : | |
| Appellant | : | No. 2101 EDA 2018 |

Appeal from the Order Dated June 13, 2018
In the Court of Common Pleas of Bucks County Domestic Relations at
No(s): No. A06-2018-60978-A-37

BEFORE: BENDER, P.J.E., BOWES, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:               **FILED FEBRUARY 21, 2019**

Appellant A.F. appeals from the order granting Appellee R.A.'s request for a final protection order under the Protection From Abuse (PFA) Act, 23 Pa.C.S. §§ 6101-6122. Appellant asserts that there was insufficient evidence to support the entry of a PFA order. We affirm.

The facts underlying this matter are well known to the parties and are aptly summarized in the trial court's opinion. **See** Trial Ct. Op., 9/10/18, at 1-3. Accordingly, we need not reiterate them here. In sum, on June 6, 2018, Appellee filed a PFA petition against her ex-husband, Appellant. On June 13, 2018, the parties appeared for an evidentiary hearing before the Honorable Jeffrey G. Trauger. Appellee and Appellant had counsel, and both testified at the hearing.[1]

---

[1] Appellee testified through an interpreter at the proceedings in this matter.

At the conclusion of the June 13, 2018 hearing, the trial court entered a three-year PFA order against Appellant. Appellant filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court issued a responsive Pa.R.A.P. 1925(a) opinion in support of the trial court's conclusion at the hearing, where the court had stated that "based upon the totality of the circumstances as testified to . . . this is a [matter falling under 23 Pa.C.S. § 6102(a)(5)] under the statute, and that a protection from abuse order is warranted as specified under Pennsylvania law." N.T., 6/13/18, at 129.

On appeal, Appellant raises the following question for our review:

> Whether the trial court erred in granting a [PFA] Order because there was insufficient evidence to find that [A]ppellee was in reasonable fear of bodily injury as required by 23 Pa.C.S. § 6102(a)(5) simply by virtue of the fact that a tracking device was installed in the BMW that the parties jointly leased which was repossessed for nonpayment of lease payment, where [A]ppellee did not testify that she was in fear of bodily injury because of the tracking device, or that she was even aware of its installation prior to the hearing date, and where [A]ppellee offered no testimony or evidence of any threats by [A]ppellant to cause [A]ppellee physical harm, but instead claimed that [A]ppellant threatened to post embarrassing content about her on the internet, and that her "primary fears" related to her immigration status because of the legal documents that she signed in connection with her divorce from [A]ppellant?

Appellant's Brief at 5.[2]

_____

[2] In his Rule 1925(b) statement, Appellant also raised an issue regarding whether venue was appropriate in Bucks County. This issue has been abandoned on appeal.

- 2 -

Appellant asserts that "there was insufficient evidence to find that [A]ppellee was in reasonable fear of bodily injury . . . simply by virtue of the fact that a tracking device was installed in the BMW." *Id.* at 18. Appellant argues that the fact that a tracking device was installed in the vehicle "alone appears to be the lynchpin that [caused] the court [to] believe[] there was a 'course of conduct' that placed [A]ppellee in reasonable fear of bodily injury." *Id.* at 21. However, according to Appellant, Appellee was not aware before the hearing that the tracking device had been installed, and therefore, this fact could not be the basis for the entry of a PFA order against him. *Id.*

Following our review of Appellant's arguments and the record, we conclude that the well-reasoned opinion of Judge Jeffrey G. Trauger properly addresses the arguments raised in this appeal. *See* Trial Ct. Op., 9/10/18, at 4-8. The court's factual findings are supported in the record, and the court appropriately analyzed the totality of the circumstances. The trial court did not rely solely on the fact that a tracking device had been installed in Appellee's car as a basis to enter a final PFA order. Instead, Appellee testified that she was afraid of the Appellant and provided details regarding multiple incidents that caused her fear. *See, e.g.*, N.T., 6/13/18, at 13-14.

As the trial court noted at the evidentiary hearing on June 13, 2018, its conclusion that a PFA order was warranted was based on its credibility determinations and all of the circumstances presented in the case. *See* N.T., 6/13/18, at 129. Therefore, we discern no error in the court's conclusion that

sufficient evidence was presented justifying a PFA order against Appellant, and we affirm of the basis of the trial court's discussion of this issue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/19

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
### FAMILY COURT DIVISION

R███ A███                                :        NO. A06-2018-60978-A-40
                                         :
                                         :
                                         :
     v.                                  :        2101 EDA 2018
                                         :
                                         :
                                         :
A███. F███                               :



Case # 2018-60978-0017 A   12053292
Main (Public)
Code 5214      Judge 37
Rcpt 22049700   9/11/2018 9:43 35 AM

### OPINION

A███ F███ (hereinafter referred to as "Appellant"), appeals to Pennsylvania Superior Court from the final Protection from Abuse Order (hereinafter referred to as "PFA") entered by this Court on June 13, 2018 against him on behalf of R███ A███ (hereinafter referred to as "Appellee"). Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), we now file this Opinion in the above-captioned matter in support of the Court's ruling.

### I.    PROCEDURAL BACKGROUND

On June 6, 2018, Appellee filed a handwritten Petition for Protection from Abuse ("PFA") against Appellant, alleging, among other things, that she was fearful for her life after Appellant posted an online video alleging false accusations about her committing infidelity. A███ further alleged that Appellant continued to threaten to post more videos and inappropriate pictures of her online which might cause her family or other persons to kill her upon her return to Egypt as it violates cultural and religious beliefs. An ex parte hearing was held before the Honorable Susan Devlin Scott on June 6, 2018, and A███ was granted a temporary PFA Order. A full evidentiary hearing upon the Petition was held before the undersigned on June 13, 2018 with the presence of a certified court-appointed Arabic interpreter as requested by Appellee. The Court heard testimony from Appellant and Appellee, and

15

after examining the record, assessing witnesses' credibility and considering the evidence and testimony presented, the Court entered a final Order awarding Appellee Protection from Abuse from Appellant for the maximum statutory period of three (3) years, which is the subject of this appeal.

## II.    FACTUAL BACKGROUND

The record before this Court reflects that Appellant, forty-seven (47) years old and Appellee, thirty (30) years old, were married in 2015 and divorced in 2017. (N.T. 6/13/2018, p. 9) Their marriage was a family-arranged marriage in accordance with the parties' religion and Egyptian culture. The marriage took place in their home country of Egypt through both parties' families without the physical presence of Appellant, but by Appellant's representation through his brother. (N.T. 6/13/2018, p. 37) The parties had only communicated through the internet (i.e. Skype) and did not physically meet prior to Appellee arriving in the United States in 2015 when the parties effectuated the marriage under American law. (N.T. 6/13/2018, p. 38) Both parties agreed the marriage was flawed and consented to the dissolution of the marriage in 2017.

Appellee testified she came to the United States with money of an approximate value of Ten Thousand U.S. Dollars ($10,000). (N.T. 6/13/2018, p. 39) Due to the fact that Appellee was in a new country, with no friends or family members other than Appellant and a language barrier, Appellee relied on and trusted Appellant's recommendations in preparing and signing various legal documents including her immigration papers. (N.T. 6/13/2018, p. 71) Appellee also trusted Appellant with her money which he allegedly used for investment purposes. (N.T. 6/13/2018, p. 11) After the divorce, Appellant thereafter used the Ten Thousand Dollars ($10,000) along with his own money to buy a house jointly owned together with Appellee and a friend of Appellant. (N.T. 6/13/2018, p. 11, 41-42) Evidence before the Court confirmed the house located at 505 Orchard Avenue, Warminster,

2

Bucks County, Pennsylvania (hereinafter referred to as "Residence") is jointly owned by Appellant and Appellee. (N.T. 6/13/2018, pp. 10-11)

The record reflects that after the divorce, Appellee resided at the Residence. Appellant stated he would occasionally reside there but the parties would stay in separate bedrooms. (N.T. 6/13/2018, p. 113) The record also confirms Appellant changed the locks at one point and thereafter Appellee began residing with friends when she no longer had access to the Residence.

In the Petition filed with the Court on June 6, 2018, and the Supplemental Petition filed on June 12, 2018, Appellee listed multiple incidents where Appellant threatened to hurt her. Appellee testified Appellant communicated his threats and intimidation to her personally and to her family. (N.T. 6/13/2018, pp. 13-15, 18, 24, 29, 32-34) After consideration of all evidence and testimony presented at the June 13, 2018 hearing, the Court granted Appellee's request for a final PFA Order for a period of three (3) years. On July 11, 2018, Appellant filed a Notice of Appeal to the Superior Court appealing the June 13, 2018 final PFA Order. On July 16, 2018, this Court ordered Fattah to file a Concise Statement of Errors which he has done. The Court now files this Opinion in support of its ruling.

## III.   STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

On July 16, 2018, this Court issued an Order pursuant to Pa.R.A.P. 1925(b) directing Appellant to file of record and serve on the undersigned a Concise Statement of Errors Complained of on Appeal within twenty-one (21) days of the date of this Order. The Order also directed that "any issue not properly included in the concise statement shall be deemed waived."

On August 6, 2018, Appellant filed a Concise Statement of Errors Complained of on Appeal, set forth *verbatim* herein:

3

1. Whether this Honorable Court lacked proper venue because plaintiff failed to establish that either party resided or was employed within Bucks County at the time the Protection from Abuse action was brought, failed to establish that any alleged act of abuse occurred within Bucks County, and did not request possession of a residence located in Bucks County?

2. Whether this Honorable Court erred in granting a Protection from Abuse Order because there was insufficient evidence to find that plaintiff was in reasonable fear of bodily injury as required by 23 Pa.C.S. § 6102(a)(5) simply by virtue of the fact that a tracking device was installed in the BMW that the parties jointly leased which was repossessed for nonpayment of lease payment, where plaintiff did not testify that she was in fear of bodily injury because of the tracking device, or that she was even aware of its installation prior to the hearing date, and where plaintiff offered no testimony or evidence of any threats by defendant to cause plaintiff physical harm, but instead claimed that defendant threatened to post embarrassing content about her on the internet, and that her "primary fears" related to her immigration status because of the legal documents that she signed in connection with her divorce from defendant?

## IV.    DISCUSSION

The Superior Court has continuously held that the standard of review in PFA orders is evaluating the trial court's legal conclusions for an error of law or abuse of discretion. Trout v. Strube, 97 A. 3d 387 (Pa. Super. 2014). When considering issues of statutory interpretation, the applicable standard of review is de novo and the scope of review is plenary. Scott v. Shay, 928 A.2d 312, 314 (Pa. Super. 2007).

"When faced with a sufficiency challenge under the [PFAA] we review the evidence in the light most favorable to the petitioner and, granting [him] the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." Custer v. Cochran, 933 A.2d 1050, 1058 (Pa. Super. 2007). In a

4

hearing on a petition for an order for protection from abuse pursuant to Protection from Abuse Act, the Superior Court defers to credibility determinations of trial court as to witnesses who appeared before it. Id. "The preponderance of evidence standard is defined as the greater weight of the evidence, i.e., to tip a scale slightly is the criteri[on] or requirement for preponderance of the evidence." Ferri v. Ferri, 854 A.2d 600, 602–603 (Pa. Super. 2004) (internal citations and quotations omitted).

Appellant initially argues that this Court lacked proper venue. Under Pa.R.C.P. § 1901, an action for protection from abuse may be brought in a county in which: (1) the plaintiff resides, either temporarily or permanently, or is employed; (2) the defendant may be served; or (3) the abuse occurred. Pa.R.C.P. §1901(a). The record before this Court established that both parties have ownership interest in the property located at 505 Orchard Avenue, Warminster, Bucks County Pennsylvania, where Appellee resided prior to Appellant changing the locks. That residential property is also where Appellant was residing with his new wife at the time of the filing of the Protection from Abuse action and at the time of the final hearing held on June 13, 2018. Accordingly, the Court did not err in finding proper venue in Bucks County, and Appellant's contention is wholly without merit.

Appellant also argues that the Court erred in granting a final Protection from Abuse Order in favor of Appellee because there was a lack of sufficient evidence to support the conclusions Appellee was placed in reasonable fear of bodily injury as required under 23 Pa.C.S. § 6102(a)(5). Appellant claims the mere fact that he installed a tracking device in Appellee's car without her knowledge is not sufficient to meet the requirements under 23 Pa.C.S. § 6102(a)(5). The record, however, includes numerous actions by F███ which support the Court's conclusion in this case.

"The PFA Act operates to protect victims of domestic violence and permit the courts to respond quickly and flexibly to both early signs and subsequent acts of abuse with the issuance of protection orders." Commonwealth v. Walsh, 36 A.3d 613, 617 (Pa. Super. 2012) (citations omitted).

5

The statute specifically provides protection for "family or household members" of the alleged abuser. Id. The term "family or household members" is defined as "spouses or persons who have been spouses, persons living as spouses or who lived as spouses, parents and children, other persons related by consanguinity or affinity, current or former sexual or intimate partners or persons who share biological parenthood." Id.

It is also well-established that "[p]ursuant to the PFA Act, 23 Pa.C.S.A. §§ 6101-6117, a PFA petitioner 'must prove the allegation of abuse by a preponderance of the evidence,' and that '[a] [PFA] Petitioner is not required to establish [that] abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence.'" Boykin v. Brown, 868 A.2d 1264, 1265-1266 (Pa. Super. 2005) (citing 23 Pa.C.S.A. § 6107(a); Snyder v. Snyder, 629 A.2d 977, 982-83 (1993).

The Pennsylvania Protection from Abuse Act, 23 Pa.C.S. § 6102, defines "abuse" in pertinent part as follows:

> § 6102. Definitions
>
> (a) General rule.--The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:
>
> "Abuse." The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> > (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
> >
> > (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> ***
>
> > (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances

which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102.

It is the firm conclusion of this Court that Appellant (may have illegally and possibly being sufficient grounds for criminal charges) installed a GPS tracking device in Appellee's vehicle without her knowledge or consent. In addition, the record shows F▇▇▇ took advantage of Appellee's language barrier, lack of family, and the complete trust she placed in Appellant to facilitate the false claim on her immigration application that she was a lesbian and thereafter conveying that claim and related information online to persons in Egypt, effectively precluding her ability to return home without facing a threat of violence. The record before this Court is convincing and clear that Appellee felt severely threatened and intimidated by Appellant. Appellee was visibly shaken and terrified during her testimony at the June 13, 2018 hearing. Appellee testified that Appellant would call and text her, and if she did not respond, Appellant would scream and yell at her. Appellee also testified that when Appellant could not reach her, he would contact her family in Egypt threatening to spread rumors about Appellee's infidelity and other immoral behaviors which are not fitting to prevailing religious beliefs and family traditions. (N.T. 6/13/2018, pp. 32-34, 56) Appellant, in fact, posted a video on Facebook, which may very well place Appellee's life in danger should her immigration status change and she is forced to return to Egypt. (N.T. 6/13/2018, pp. 32-33, 50-51, 65)

Throughout her testimony, Appellee repeatedly stated that Appellant threatened to alter her immigration status, again taking advantage of Appellee's lack of knowledge, an action which might force her to be deported back to Egypt where her life is threatened as result of Appellant's posted video on Facebook, claims of her lesbianism, as well as other behaviors not fitting the Islamic religion. Appellant continued to threaten Appellee that he would post naked pictures of her. Disturbingly,

7

Appellee testified Appellant would frequently show up in the same places where Appellee happened to be including the bank, her job, and other public places (likely using the tracking device he installed without Appellee's knowledge or consent on her vehicle). (N.T. 6/13/2018, pp. 22, 61)

It is troubling to this Court that F█████ appealed the final PFA Order in his continued effort to threaten and intimidate Appellee. The parties were married for a short period of time, both agreed their marriage did not work and both consented to the divorce which was finalized May 2017. The parties never had children. Appellant has moved on with his life, remarried, and at the time of the hearing, his new wife was pregnant. Appellant further testified without any corroborating evidence and without any credibility that Appellee threatened him and his pregnant wife. (N.T. 6/13/2018, p. 116) Based on the foregoing and all of the evidence and testimony as witnessed by this Court, there is absolutely no reason for Appellant to be in contact with Appellee or to otherwise track her whereabouts by GPS on his personal cell phone. His attorney should assist him in resolving the remaining ownership interest related to the property located at 505 Orchard Avenue, Warminster, Bucks County, Pennsylvania, to conclude that last connection between the parties.

## V.   CONCLUSION

Based upon the foregoing reasons, this Court finds an abundance of credible evidence was presented at trial supported the decision to grant the final three (3) year Protection from Abuse Order, and, therefore, we recommend that this appeal be denied and dismissed.

BY THE COURT:

N.B.     It is your responsibility
to notify all interested parties
of the above action.

_____
JEFFREY G. TRAUGER, JUDGE

Date: September 10, 2018

8

*Randa Attia v. Abdel Fattah*
*Bucks County Court of Common Pleas Civil Division, No.   A06-2018-60978-A-40*

Copies to:

Erin C. Lentz-McMahon, Esquire
McMahon, Lentz & Thompson
21 West Airy Street
Norristown, PA  19401
   *Attorney for Defendant*


Barbara Kaner, Esquire
Bucks County Legal Aid Society
60 North Main Street
Doylestown, PA  18901
   *Attorney for Plaintiff*

9